NIGHT BOX
FILED
APR 03 2003
CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 01-8087-CR-GRAHAM/TURNOFF

UNITED STATES OF AMERICA,

Plaintiff,

vs.

MOHAMMED MALIK,

Defendants.
____________________________/

**GOVERNMENT'S RESPONSE TO DEFENDANT MALIK'S MOTION REQUESTING RECOMMENDATION FOR INTENSIVE CONFINEMENT CENTER PROGRAM**

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files its response to defendant Mohammed Malik's motion requesting that the Court recommend his placement into the Bureau of Prisons Intensive Confinement Center Program and states as follows:

1. On February 15, 2002, defendant Malik was sentenced to 30 months imprisonment followed by 3 years supervised release. Defendant Malik began serving his sentence at F.P.C. Lewisburg on October 1, 2002.

2. According to defendant Malik, he is eligible for placement in the Bureau of Prisons Intensive Confinement Center Program. The next class will begin in June 2003. That program is a "boot-camp" type program which includes: strict discipline and a daily regimen of physical conditioning; military drill and



ceremony; labor-intensive work assignments; adult literacy program; vocational training; drug and alcohol counseling; stress management programs; life-coping skills; parenting programs; positive personal attitude and self-esteem program; family budgeting; nutritional information; and other programs consistent with a "total wellness" concept. The program ordinarily is six months in duration. The Program Statement is attached as Exhibit 1.

3. Candidates for the program ordinarily have limited education, a history of drug or alcohol abuse and other life-coping issues. Since defendant Malik does not have those problems, he may not be an appropriate candidate for the program.

4. In any event, the Court should be aware that a defendant who successfully completes the six month program will be released to a halfway house for a period of time and then serve the remainder of his sentence in home confinement. Therefore, defendant Malik could end up serving only about 13 months imprisonment of his 30 months prison sentence before being released to a halfway house.

5. The undersigned Assistant United States Attorney has conferred with the FBI and ATF agents who investigated this case. Based on the circumstances of this case and the possibility for such an early release from imprisonment, the government opposes defendant Malik's motion for recommendation for placement in the Intensive Confinement Program.

Respectfully submitted,

MARCOS DANIEL JIMENEZ
UNITED STATES ATTORNEY

BY: ______________________________

ROLANDO GARCIA
ASSISTANT UNITED STATES ATTORNEY
Fl. Bar No. 0763012
500 Australian Avenue, 4th Floor
West Palm Beach, FL 33401
(561) 820-8711; fax (561) 820-8777

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 2nd day of April, 2003 to: Mohammed A. Malik, pro se, 71663-004, F.P.C. Lewisburg, P.O. Box 2000, Lewisburg, PA 17837.

ROLANDO GARCIA
ASSISTANT UNITED STATES ATTORNEY



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Statement

**OPI:** CPD
**NUMBER:** 5390.08
**DATE:** 11/4/99
**SUBJECT:** Intensive Confinement Center (ICC) Program

1. **[PURPOSE AND SCOPE § 524.30. The intensive confinement center program is a specialized program combining features of a military boot camp with the traditional correctional values of the Bureau of Prisons, followed by extended participation in community-based programs. The goal of this program is to promote personal development, self-control, and discipline.]**

2. **SUMMARY OF CHANGES.** This re-issuance incorporates new rule text consistent with the Categorization of Offenses Program Statement which gives the Director discretionary authority regarding the interpretation of felony offenses.

This reissuance also more clearly defines ICC eligibility criteria. To ensure that inmates do not receive dual benefits for completing both the Drug Abuse Program (DAP) and ICC program, placement criteria has been changed for DAP graduates.

Additionally, a section has been added to clarify release paperwork procedures for institution staff.

Retroactive procedures regarding sentence reductions were deleted. These procedures applied to inmates who were enrolled in, or had completed, the program when 18 U.S.C. § 4046 was enacted.

The addition of Attachment B, page 2, affords Assistant U.S. Attorneys the opportunity to comment on transfers to ICCs for inmates sentenced to more than 30 months.

Lastly, the Program Statement identifies FCI Lompoc ICC (LOF ICC) as the newest program site.

**[Bracketed Bold - Rules]**
Regular Type - Implementing Information

Exhibit 1

PENGAD-Bayonne, N.J.

3. **PROGRAM OBJECTIVES.** The expected results of this program are:

a. Inmates who are eligible and approved will be able to participate in structured, intensive programs designed to promote personal development, self-control, and discipline.

b. Inmates who complete the institution-based component of the Intensive Confinement Center (ICC) program will ordinarily be able to serve the balance of their sentences in community-based programs.

c. Eligible inmates who complete the institution-based component of the intensive confinement program and maintain successful participation in the community-based component will be considered for a reduction in sentence not to exceed six months.

4. **DIRECTIVES AFFECTED**

a. **Directive Rescinded**

| | |
|---|---|
| PS 5390.07 | Intensive Confinement Center Program (4/26/96) |

b. **Directives Referenced**

| | |
|---|---|
| PS 5100.06 | Security Designation and Custody Classification Manual (6/7/96) |
| PS 5162.04 | Categorization of Offenses (10/9/97) |
| PS 5270.07 | Inmate Discipline and Special Housing Units (12/29/87) |
| PS 5330.10 | Drug Abuse Programs Manual, Inmate (5/25/95) |
| PS 7310.03 | Community Corrections Center (CCC) Utilization and Transfer Procedure (3/25/96) |

18 U.S.C. § 4046
18 U.S.C. § 3621

c. Rules cited in this Program Statement are contained in 28 CFR § 524.30 - 33.

5. **STANDARDS REFERENCED**

a. American Correctional Association Second Edition Standards for the Administration of Correctional Agencies: None

b. American Correctional Association 3rd Edition Standards for Adult Correctional Institutions: None

c. American Correctional Association 3rd Edition Standards for Adult Local Detention Facilities: None

d. American Correctional Association Standards for Adult Correctional Boot Camp Programs: 1-ABC-1E-09, 3D-06, 3D-07, 4A-05, 4A-06, 4A-07, 4B-07, 4F-19, 4F-01, 4F-08, 4G-03, 4G-07, 4G-10, 5A-04, 5D-11, 5D-12

6. **PRETRIAL/HOLDOVER AND/OR DETAINEE PROCEDURES.** The procedures contained in this Program Statement apply only to sentenced inmates.

7. **PROGRAM PHILOSOPHY AND STRUCTURE**

a. **ICC Philosophy.** An ICC's purpose is to place inmates in a highly structured environment as a means of promoting personal development, self-control, and discipline, thereby reducing the potential for recidivism. ICCs are specialized programs that integrate military boot camp philosophy with the Bureau's traditional correctional values.

Although these programs involve a very intensive, highly structured environment, the Bureau's "core values" and inmate management procedures are maintained. Accordingly, ICC programs do not include verbal or physical abuse, or summary discipline.

b. **ICC Structure and Program Components.** An ICC is a single gender, minimum security institution designed to house either male or female adult inmates. Inmates who meet ICC eligibility criteria are placed in the program for six months. The program includes:

- strict discipline and a daily regimen of physical conditioning
- military drill and ceremony
- labor-intensive work assignments
- adult literacy program
- vocational training
- drug and alcohol counseling
- stress management programs
- life-coping skills
- parenting programs
- positive personal attitude and self-esteem program
- family budgeting
- nutritional information
- other programs consistent with a "total wellness" concept

Ordinarily, traditional inmate privileges, such as radios, are not available to ICC inmates, and television viewing is limited during the extended six-day work week. Performance Pay is not available to ICC inmates for work assignments.

The rigorous nature of the 17-hour daily curriculum permits little free time. Thus, visiting and telephone privileges are limited. Through this system of structure, discipline, and programming, inmates can improve their physical, social, and emotional well-being.

8. **[<u>ELIGIBILITY AND PLACEMENT</u> § 524.31**

**a. Eligibility for consideration of placement in the intensive confinement center program requires that the inmate is:**

**(1)(a) Serving a sentence of more than 12, but not more than 30 months (see 18 U.S.C. 4046), or]**

Inmates serving sentences of more than 12 but not more than 30 months are ordinarily placed in ICCs at initial designation.

**[(b) Serving a sentence of more than 30, but not more than 60 months, and is within 24 months of a projected release date.]**

Inmates serving sentences of more than 30, but not more than 60 months, who are otherwise eligible, ordinarily are placed in an ICC upon redesignation. Refer to Section 16. b. of this Program Statement for optimum placement time frames.

**[(2) Serving his or her first period of incarceration or has a minor history of prior incarcerations;]**

Ordinarily, a minor or serious history of incarceration should be defined according to the "type of prior commitment" category in the Security Designation and Custody Classification Manual; however, for ICC placement purposes, juvenile adjudications in the moderate severity offense category should be considered as a minor history of incarceration.

**[(3) Is not serving a term of imprisonment for a crime of violence or felony offense:**

**(a) that has as an element, the actual, attempted, or threatened use of physical force against the person or property of another, or**

**(b) that involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives (including any explosive material or explosive device), or**

**(c) that by its nature or conduct, presents a serious potential risk of physical force against the person or property of another, or**

**(d) that by its nature or conduct involves sexual abuse offenses committed upon children.]**

Staff must refer to the Program Statement on Categorization of Offenses, to determine whether the inmate's current offense bars placement in the ICC program. Such offenses are listed in the Categorization of Offenses Program Statement in either Section 6, Offenses Categorized as Crimes of Violence, or Section 7, Offenses That at the Director's Discretion Shall Preclude an Inmate from Receiving Certain Bureau Program Benefits.

**[(4) Appropriate for housing in minimum security;]**

Ordinarily, an inmate's security level should be "minimum" before placement in an ICC. The Regional Director in the region where the ICC is located may make exceptions to this requirement.

**[(5) Physically and mentally capable of participating in the program;]**

A candidate's medical status is an extremely important factor in considering ICC eligibility and placement. The program's rigorous physical demands ordinarily bar placement of individuals whose medical history may hinder successful program completion. All potential participants must be screened medically prior to acceptance into the program.

**[(6) A volunteer.**

**b. Placement in the intensive confinement center program is to be made by Bureau staff in accordance with sound correctional judgment and the availability of Bureau resources.]**

ICCs are designed for male or female inmates the Bureau identifies who meet all of the above criteria. Ordinarily, priority placement consideration will be given to eligible inmates who pose a greater risk of re-involvement with criminal activity.

Inmates who, by virtue of their lack of program needs, do not require the intensive specialized programs offered at an ICC ordinarily are not accepted for ICC placement. Thus, inmates demonstrating a stable employment/educational/military history, etc., will not ordinarily be approved for placement in the ICC, as the program would not benefit such individuals.

9. **DESIGNATION PROCEDURES**

a. **Community Corrections Manager (CCM).** The CCM plays a significant role in identifying potential ICC candidates. One method of ICC placement occurs when a Court recommends an inmate's placement in the program at sentencing and the Bureau determines that the individual is an appropriate candidate.

The CCM identifies potential participants for ICC placement through notations on the Update Designation Data (BP-337) under the "Recommended Program" and "Remarks" sections.

When considering inmates who are non-U.S. citizens for ICC placement (initial designation or transfer), the CCM or Regional Designator must check for deportation detainers or the probability of one being lodged against the inmate. If a deportation detainer exists or is probable, the inmate ordinarily is not a suitable candidate for ICC placement. All other detainers and pending charges must be resolved prior to ICC placement.

The CCM should ensure that the inmate's voluntary surrender date coincides with the ICC TEAM assignment before the designation request is submitted. When the inmate's voluntary surrender date has been assigned by the Court and does not coincide with the ICC Team Assignment, the CCM must contact the Court and request the date be modified accordingly.

If the CCM identifies a case that meets all the criteria but has not been recommended by the Court, the CCM must ensure that the sentencing court has been notified prior to placement (see Attachment A or B). Once the CCM has notified the sentencing judge and afforded him or her the two-week period with the option to respond, designation procedures will continue accordingly.

b. **Regional Designator.** Regional Designators make the initial designation to the ICC. The Designator must consider all information the CCM provides when making ICC designations. Should the Designator identify a possible participant the CCM has not previously identified, he or she must contact the CCM to discuss the case.

Designators must use the appropriate SENTRY institution designation code (LEW, BRY, or LOF ICC) for designations to the ICC and ensure the following is placed under the designator comments: "DES LEW, BRY, or LOF ICC, TEAM (number)." Designators must also enter the appropriate CMA assignment and ICC TEAM (number) which coincides with the published ICC schedule.

Regional Designators must not make secondary designations to an ICC program. Likewise, the respective Regional Designator must designate an appropriate institution immediately for inmates arriving at an ICC who elect to "opt out." If the Regional Designator is informed that the inmate refuses to participate in the ICC, routine re-designation procedures must be followed, and the inmate is not to be penalized for refusing the program.

If the inmate refuses ICC participation, staff must document the refusal on the Inmate Acknowledgment for ICC Placement form (Attachment C). Then, unit staff must request re-designation to an appropriate institution immediately by the respective Regional Designator.

The Regional Designator must deny any recommendation for initial designation or transfer to an ICC if the inmate fails to meet the established criteria. The appropriate Regional Director, or designee, must provide a written response to all judicial recommendations for ICC participation when the inmate is either not eligible or inappropriate for the ICC program.

c. **ICC Administrator**. The ICC Administrator must work closely with the appropriate Regional Designator to prevent a backlog of incoming or outgoing inmate designations. This requires daily monitoring of the CMA category "(facility) ICC TEAM (number)" and a strong line of communication between them.

The ICC Administrator must:

- notify all Designators and CCMs immediately via EMS when a particular TEAM schedule date is full;
- recommend the next date; and,
- identify the number of vacancies available.

If an inmate "opts out," fails, or is otherwise removed from the program, the ICC Administrator must prepare correspondence to the judge who made the initial recommendation. Such correspondence must include a brief description of the inmate's participation at the ICC and the specific reason for departure. A copy must be forwarded to the respective Regional Director and the Assistant Director, Correctional Programs Division.

ICC Administrators are ultimately responsible for ensuring that their respective "ICC Overview," used for familiarization and orientation, is accurate and updated quarterly.

10. **REDESIGNATION PROCEDURES**

a. **Priority Assignment/Waiting List**. Direct court commitments have priority over institution transfers, (who are placed on a waiting list and accepted into the program sequentially), provided their sentences are within the specified time-frame and bed space is available.

b. **Detainers**. When considering inmates who are non-U.S. citizens for ICC placement (initial designation or transfer), the CCM or Regional Designator must check for deportation detainers or the probability of one being lodged against the inmate. If a deportation detainer exists or is probable, the inmate ordinarily is not a suitable candidate for ICC placement. All other detainers and pending charges must be resolved prior to ICC placement.

c. **Transfer Requests**. For a proposed re-designation to an ICC, the Request for Transfer (EMS-409) must be sent to the Regional Designator in the region where the ICC is located. Information concerning the notification status to the sentencing court must be included under "Additional Information." If there was no judicial recommendation for ICC placement at sentencing, unit staff must use the appropriate sample letter (Attachment A for inmates with more than 12, but not more than 30 month sentences; Attachment B for inmates with sentences greater than 30 months) to notify the sentencing judge and AUSA before placement. Once the Warden has notified the sentencing judge and AUSA and afforded them the two-week period with the option to respond, redesignation procedures will continue accordingly.

11. **INTAKE PROCESSING**. ICC staff must orient each potential participant fully, determine the inmate's willingness to participate in the program, and ensure each inmate meets the established eligibility criteria described in Section 8. Staff must also determine whether each inmate is physically able to participate in the program and document this by completing the Medical History Report (BP-360) after the routine physical examination.

Once established, staff must have the inmate sign the Inmate Acknowledgment for ICC Placement form (Attachment C).

12. **[INSTITUTION-BASED COMPONENT PROCEDURES § 524.32**

**a. An eligible inmate who volunteers for participation in an institution-based intensive confinement center program must agree to forego opportunities which may be otherwise available to inmates in Bureau institutions. Opportunities that may be affected include, but are not limited to, visitation, telephone use, legal research time, religious practices, commissary, smoking, and grooming preferences.**

**b. The institution-based component of the intensive confinement center program ordinarily is six months in duration.**

**c. Disciplinary procedures to be followed in the institution-based intensive confinement center program are set forth in subpart B of part 541 of this chapter.]**

Subpart B of part 541 refers to the Program Statement on Inmate Discipline and Special Housing Units.

**[d.(1) An inmate who successfully completes the institution-based component of the program ordinarily is eligible to serve the remainder of the sentence in a community-based program.**

**(2) An inmate eligible for participation in the program under § 524.31(a)(1)(a) who successfully completes the institution-based component, who maintains successful participation in a community-based program, and has a period of supervised release to follow is eligible for up to a six month reduction in sentence.]**

Inmates eligible for ICC participation under Section 524.31(a)(1)(i), which refers to Section 9.a.(1) of this Program Statement, are serving a sentence of more than 12, but not more than 30 months.

**(3) An inmate who completes or has completed the institution-based component of an intensive confinement center pilot program, who maintains successful participation in a community-based program, and has a period of supervised release to follow is eligible for up to a six month reduction in sentence if staff confirm that the inmate has met the requirements of § 524.31(a)(1)(a), (2), (3), and (4)].**

13. **[PROGRAM FAILURE § 524.33. An inmate who fails to complete the institution-based component or who subsequently fails participation in a community-based program may forfeit his or her further involvement in the program.]**

The ICC Administrator may terminate participants who fail to meet the ICC participation requirements. If an inmate who is eligible for sentence reduction is removed from the ICC program, the ICC Administrator must forward the Notification of Change in ICC Sentence Reduction Status (Attachment E) to the ISM department.

Upon receiving the Notification of Change in ICC Sentence Reduction Status, ISM staff must remove the projected "4046C CMPL" date from SENTRY. Inmates who do not complete the program fully must have an appropriate institution designated to serve the imposed sentence without the benefit of any special incentives identified in this Program Statement.

An inmate who fails to comply with CCC or Home Confinement requirements and is terminated from community-based programming must be redesignated pursuant to the Security Designation and Custody Classification Manual.

14. **DETAINERS AND SPECIAL CIRCUMSTANCES.** If a detainer is lodged, or staff become aware of pending charges anytime after the inmate begins the ICC program, the ICC Administrator must be informed. If the detainer cannot be resolved, the inmate must be transferred to a more secure institution. Likewise, if no detainer is lodged, but staff discover pending charges which are unlikely to be resolved, the inmate must be transferred to a more secure institution.

If the inmate is eligible for early release and has a "4046C CMPL" date, the ICC Administrator must prepare the Notification of Change in ICC Sentence Reduction Status (Attachment E) and forward it to the Inmate Systems Management (ISM) department. If the detainer is subsequently removed and the inmate continues in the ICC program, a new Notification of ICC Sentence Reduction (Attachment D) must be forwarded to the ISM.

15. **COMMUNITY PLACEMENT TRANSITION**

a. **ICC Completion.** An inmate who completes the program successfully may have the opportunity to serve the remainder of his or her sentence in a community-based program, in the inmate's home community when practicable. Inmates must be making an effort to pay any special assessments, fines, restitution, or other court-ordered financial obligation(s). An inmate who refuses to participate in the Inmate Financial Responsibility

Program may not be transferred to a CCC. An inmate may be removed from community-based participation should he or she fail to continue to make an effort to pay any financial obligation.

Occasionally, the inmate's sentence length may not permit sufficient transition time in the CCC/Home Confinement component prior to release. Then, the ICC Administrator is authorized to retard a "4046 CMPL" date as needed by using Attachment F. The completed Attachment F must be delivered to the inmate, and a copy forwarded to the Inmate Systems Manager.

In addition, some ICC graduates may be eligible for early release, not to exceed six months, if certain criteria are met. Within 30 days after an ICC class begins, the ICC Administrator must complete a Notification of ICC Sentence Reduction (Attachment D) on all inmates eligible for early release. The Notification of ICC Sentence Reduction must be forwarded to the ISM department. ISM staff must enter the ICC graduation date noted on Attachment D into SENTRY to calculate the new "4046C CMPL" date.

b. **ICC Pre-Release**. Each ICC graduating team must participate in a Pre-Release meeting that includes presentations by Community Corrections, U.S. Probation, and, if possible, CCC contract staff.

c. **CCC Referral**. The brief ICC program period, and the need to immediately transfer ICC graduates to a CCC, require expeditious processing of these referrals. Three months prior to the inmates' completing the ICC program, staff will identify cases as likely candidates for successful program completion and refer these cases to the appropriate CCM. This time-frame differs from the time-frame for general institution transfers, which requires mailing the packet at least 60 days prior to the requested placement date. ICC referral packets also differ from general institution transfer packets in that an Inmate Acknowledgment form and a sentence computation must be included in the packet.

Staff must forward referral material to the appropriate CCM and Transitional Services Manager (TSM) as required by the Community Corrections Center (CCC) Utilization and Transfer Procedures Program Statement and the Inmate Drug Abuse Programs Manual. The CCM must respond within 30 days of receipt. The CCM makes the notification by entering the destination assignment (DST) and CCC acceptance date into SENTRY.

If there are any problems with placing the inmate on the requested date, the CCM must discuss placement alternatives with

the Management Center Administrator (MCA) before notifying the ICC Administrator.

d. **Inmates Needing Drug Treatment.** All inmates in the ICC must be assessed as to their drug history and the potential need for follow-up treatment when released to the community phase. Once identified, these inmates must be entered into SENTRY (see Section 18) to alert the Regional Transitional Services Managers of prospective participants in the drug transition program. Institution staff must forward any drug history documentation or assessments to the appropriate TSM.

ICC inmates identified for transitional services must sign the Agreement to Participate in BOP Community Transition Programing form, found in the Inmate Drug Abuse Programs Manual. This agreement and information regarding the inmate's participation in the ICC Drug Treatment Program must be included in the CCC referral packet. TSMs and Community Corrections staff must make every effort to place all identified inmates in an appropriate transition program.

e. **Furlough Transfer.** Actual transfer of ICC inmates must be accomplished **using the same procedures** as any other furlough transfer to a CCC. Institution staff must complete (as indicated) and forward the following documents to the appropriate CCM office:

- **I-13 Notice of Release and Arrival, Section One**

  Name; Register Number; FBI Number; Type of Release; Was there a previous release on this sentence?

- **Attachment B-Installment Schedule Agreement for Unpaid Fines**

  Prepare attachment on individual basis, as needed.

- **Supervision Release Plan BP-522**

  Printed Name and Signature of Inmate; Register Number

16. **COMMUNITY-BASED COMPONENT.** In view of an inmate successfully completing the rigorous ICC program, the time allowed for community corrections program participation may be increased. The specific time permitted for each phase of community program participation is based on an inmate's total sentence length, as well as the inmate's overall adjustment to the program, resources available, and legal restrictions. The

CCM will have the authority to adjust the length of time spent in each phase.

a. **12 to 30-Month Sentence**

| SENTENCE | ICC | CCC | HOME CONFINEMENT | AMOUNT OF REDUCTION |
|---|---|---|---|---|
| 12-16 mos | 6 mos | 2-3 mos | Remainder of term, less amount of reduction | 3 mos |
| 17-20 mos | 6 mos | 2-3 mos | | 4 mos |
| 21-25 mos | 6 mos | 3-5 mos | | 5 mos |
| 26-30 mos | 6 mos | 4-6 mos | | 6 mos |

b. **30 to 60-Month Sentence.** Inmates serving sentences greater than 30 months may be transferred to the ICC **no earlier than 24 months** prior to a projected release date, with **optimum time** for placement at **18 to 20 months**. However, graduates of the Drug Abuse Program (**DAP**) are not eligible for transfer until they are within **12 months** of their 3621(e) release date.

Since inmates with sentences greater than 30 months are ineligible for early release, they will typically remain in Home Confinement following completion of the CCC stage. Inmates will be considered for Home Confinement when eligible (placement not to exceed six months or 10% of the term). DAP graduates who complete the ICC program will transfer to a CCC for the remainder of their sentence, not to exceed six months.

c. **Community Corrections.** There are two Community Corrections stages:

- Community Corrections Center
- Home Confinement

Ordinarily, an inmate will be transferred to a CCC immediately following completion of the ICC program. Typically, ICC graduates will be placed in the CCC's pre-release component after completing an orientation period. Transfer to a CCC and progress through each stage depends upon the inmate's favorable adjustment. Increased freedom is based on demonstrated personal responsibility and commitment to law-abiding behavior. An inmate who fails to comply with CCC program requirements may be placed in a more restrictive program phase, or terminated from CCC programming altogether and returned to a regular correctional institution for the remainder of his or her sentence.

The CCM must approve any movements between phases and ensure that these movements are documented in the inmate's file. If an inmate meets the criteria for an early release, the CCM must notify U.S. Probation 30 days prior to the "4046C CMPL" date that an inmate is being released to supervision. If the "4046C CMPL" date is later delayed for any reason, the CCM must notify U.S. Probation of the projected release to supervision.

If the inmate "opts out" or is removed from the program during the community phase, the CCM must prepare written correspondence to the judge who made the initial recommendation.

d. **4046C CMPL Release.** Ordinarily, the Community Corrections Regional Administrator (CCRA) may delay an early release date due to the inmate's failure to establish an approved release plan or failure to meet program goals. Then, the inmate must be notified in writing of the reasons for the delay and be provided with a new "4046C CMPL" date.

Each time a change is made to the "CMPL" date, a copy of the notification to the inmate must be placed in the J&C file, and CCM staff must enter the inmate's new "4046C CMPL" date into SENTRY.

If the inmate later meets the criteria satisfactorily, the CCM must be notified immediately and the release paperwork prepared as soon as practicable. If early release was denied or delayed for any reason and the inmate remains in the CCC or on Home Confinement, the CCM must review the case monthly until the sentence is completed, or the inmate is returned to an institution. If the inmate establishes a suitable release plan or meets program goals in the interim, the CCM must consult with the CCRA to re-establish the date.

17. **DISCIPLINE PROCEDURES.** Any ICC graduate found guilty of the most serious level (100 series) of infractions must be removed from the CCC or Home Confinement and transferred to a secure institution for the remainder of the committed sentence. Any removal from the community as a result of the disciplinary process will result in the loss of the 4046C early release date.

18. **SENTRY TRANSACTIONS.** To monitor the program effectively and gather needed research data, the following SENTRY assignments are established for ICC participants:

a. **CMA Assignments**

(1) **BRY, LEW, or LOF ICC 01,02,03,** etc. Indicates the ICC Team number scheduled for the inmate. The CMA assignment used must coincide with the respective ICC team schedule. Because of the limited number of inmates allowed to participate, this CMA assignment is of particular importance to Designators and ICC Administrators for tracking designations.

(2) **ICC PART** ICC participants.

(3) **ICC DECL** Declined to participate in the ICC.

(4) **ICC FAIL** Intensive Confinement Center

(5) **ICC COMP** Successfully completed ICC.

(6) **ICC NOT EL** Not eligible for ICC placement.

**Note**: Items 2 through 6 above represent CMA assignments that ICC staff must enter into SENTRY to record the current status of the inmate's ICC participation. Only one Category Assignment must be entered and considered valid at any given time. "ICC PART" must be entered for each inmate at the beginning of every ICC class. This assignment is eventually replaced by one of the other four CMA assignments identifying the result of the inmate's participation. The CMA team assignment must be retained permanently for research and statistical purposes.

b. **DRG Assignment**

(1) **ICC DRUG** Requires appropriate community drug transition programs.

c. **COM Assignments**

(1) **C ICC CCC** The CCC stage of Community Corrections.

(2) **C ICC HC** The Home Confinement stage of Community Corrections.

(3) **C ICC COMP** Successful completion of the community ICC program. This assignment must be entered immediately before the inmate is permanently released.

(4) **C ICC DECL** Declined to continue participation in the community ICC program.

(5) **C ICC FAIL** Community ICC program failure.

(6) **C ICC RMV** Community ICC program removal.

d. **DST Assignments**

(1) **BRY ICC** Bryan Intensive Confinement Center.

(2) **LEW ICC** Lewisburg Intensive Confinement Center.

(3) **LOF ICC** Lompoc Intensive Confinement Center.

The CMA assignments indicating the ICC Team number and the successful completion of the ICC program at Lewisburg, Bryan, or Lompoc "4046C CMPL" will already exist on ICC inmates transferring to the community. These assignments must be retained permanently for research and statistical purposes.

The team number allows continuous tracking of ICC inmates by teams from designation through ICC and final completion of their sentence in the community.

19. **INSTITUTION SUPPLEMENT**. Each ICC must develop an Institution Supplement to implement this Program Statement. Each Institution Supplement must include procedures for:

a. Orientation of inmates to the program including a determination of physical ability to participate;

b. Monitoring of designations to avoid backlogs and ensure timely movement into Community Corrections Centers; and

c. Termination for program failures and re-designation procedures for such inmates.

A copy of the Institution Supplement must be sent to the Regional Correctional Programs Administrator and the Administrator, Correctional Programs Branch, Central Office.

/s/
Kathleen Hawk Sawyer
Director

RE: INMATE NAME
REGISTER NUMBER
DOCKET NUMBER

Dear Judge ______________:

I am writing regarding the above-captioned inmate who was sentenced in your court on __________ to a __________ term for ________________. The Bureau of Prisons is considering this inmate as a candidate for participation in the Intensive Confinement Center (ICC) at ______________.

The Bureau's ICCs are minimum security facilities designed to house adult offenders. An ICC offers a specialized program that provides a workable balance between military boot camp and the traditional correctional values of the Bureau. This six month program involves a very intensive, highly structured environment, while maintaining the Bureau's basic philosophy of inmate management.

Inmates serving a sentence of more than 12 but not more than 30 months may be eligible for a limited sentence reduction of between three and six months depending on the length of the original sentence. To be eligible, an inmate must not be convicted of a crime of violence or any other offense identified at the discretion of the Director of the Bureau of Prisons, must meet the program goals of the community-based program, and must have an acceptable release plan.

We wanted to give you an opportunity to provide us with any information in this inmate's background that you feel would be particularly relevant to the inmate's placement in the ICC. If you wish to provide any such information, we would appreciate receiving it by ______________(two weeks from date of letter).

Thank you for your consideration of this matter.

Sincerely,

RE: INMATE NAME
REGISTER NUMBER
DOCKET NUMBER

Dear Judge ______________:

I am writing regarding the above-captioned inmate who was sentenced in your court on __________ to a __________ term for _______________. The Bureau of Prisons is considering this inmate as a candidate for participation in the Intensive Confinement Center (ICC) at ______________.

The Bureau's ICCs are minimum security facilities designed to house adult offenders. An ICC offers a specialized program that provides a workable balance between military boot camp and the traditional correctional values of the Bureau.

This six month program involves a very intensive, highly structured environment, while maintaining the Bureau's basic philosophy of inmate management. To be eligible, an inmate must not be convicted of a crime of violence or any other offense identified at the discretion of the Director of the Bureau of Prisons, must meet the program goals of the community-based program, and must have an acceptable release plan. Participation is voluntary and inmates who successfully complete the program continue in a community-based program for the remainder of their sentences, ordinarily in or near their district of release.

We wanted to give you an opportunity to provide us with any information in this inmate's background that you feel would be particularly relevant to the inmate's placement in the ICC. If you wish to provide any such information, we would appreciate receiving it by _____________(two weeks from date of letter).

Thank you for your consideration of this matter.

Sincerely,

RE: INMATE NAME
REGISTER NUMBER
DOCKET NUMBER

Dear (Assistant United States Attorney)_______________:

I am writing regarding the above-captioned inmate who was sentenced on ___________ to a ___________ term for _________________. The Bureau of Prisons is considering this inmate as a candidate for participation in the Intensive Confinement Center (ICC) at _______________.

The Bureau's ICCs are minimum security facilities designed to house adult offenders. An ICC offers a specialized program that provides a workable balance between military boot camp and the traditional correctional values of the Bureau.

This six month program involves a very intensive, highly structured environment, while maintaining the Bureau's basic philosophy of inmate management. To be eligible, an inmate must not be convicted of a crime of violence or any other offense identified at the discretion of the Director of the Bureau of Prisons, must meet the program goals of the community-based program, and must have an acceptable release plan. Participation is voluntary and inmates who successfully complete the program continue in a community-based program for the remainder of their sentences, ordinarily in or near their district of release.

We wanted to give you an opportunity to provide us with any information in this inmate's background that you feel would be particularly relevant to the inmate's placement in the ICC. If you wish to provide any such information, we would appreciate receiving it by ______________(two weeks from date of letter).

Thank you for your consideration of this matter.

Sincerely,

**INMATE ACKNOWLEDGMENT FOR ICC PLACEMENT**

After being oriented by staff to the ICC and deemed appropriate for participation, each potential participant must be asked to sign one of the following statements. This acknowledgment must be signed after the inmate has read the respective "Overview Statement," been oriented by ICC staff, and had any questions answered. It must be filed in section three of the inmate's central file.

I, ____________________________, REGISTER NO. ___________________
Inmate Name **Printed**

DO HEREBY ACKNOWLEDGE THAT I HAVE BEEN ADVISED OF THE NATURE OF THE FEDERAL INTENSIVE CONFINEMENT CENTER AT ______________ AND I WISH TO VOLUNTARILY PARTICIPATE. I UNDERSTAND THAT MY PARTICIPATION IS CONTINGENT UPON CONTINUED APPROPRIATE BEHAVIOR AND PROGRAM PARTICIPATION.

____________________________ ______________________
Inmate Signature Date

____________________________ ______________________
Staff Witness Date

---

I, ____________________________, REGISTER NO. ___________________
Inmate Name **Printed**

DO HEREBY ACKNOWLEDGE THAT I HAVE BEEN ADVISED OF THE NATURE OF THE FEDERAL INTENSIVE CONFINEMENT CENTER AT ______________ AND I **DO NOT** DESIRE TO PARTICIPATE. I UNDERSTAND THAT I WILL BE DESIGNATED TO AN INSTITUTION DEEMED APPROPRIATE BY THE FEDERAL BUREAU OF PRISONS.

____________________________ ______________________
Inmate Signature Date

____________________________ ______________________
Staff Witness Date

**FEDERAL BUREAU OF PRISONS**
**PROVISIONAL NOTIFICATION OF ICC SENTENCE REDUCTION**

DATE:

TO: ______________________________
Inmate Systems Manager

FROM: ______________________________________
ICC Administrator

SUBJ: ____________________________ ________________
Inmate Name Register Number

The above-named inmate entered the ICC program on ____________.
(date)

The anticipated date of graduation is ______________.
(date)

This memorandum serves to notify you of the inmate's admittance into the program and of his or her provisional eligibility for a reduction in sentence. Please revise the inmate's projected release date to that of a "4046C CMPL."

cc: Unit Team
Community Corrections Manager

**FEDERAL BUREAU OF PRISONS**
**CHANGE IN ICC SENTENCE REDUCTION STATUS**

DATE:

TO: ______________________________
Inmate Systems Manager

FROM: ______________________________
ICC Administrator/Unit Manager**

SUBJ: ______________________ ________________
Inmate Name Register Number

The above-named inmate was participating in the Intensive Confinement Center (ICC) program.

He/she refused/failed the ICC program. He/she is no longer eligible for early release consideration. Please remove his/her "4046C CMPL" projected release date.

cc: Warden
Inmate
Central File

** When the inmate has graduated from the ICC, but has failed the community-based portion of the program and has been returned to a secure institution, it is the Unit Manager's responsibility to complete this Attachment.

**NOTICE TO INMATE THE PREVIOUSLY SCHEDULED RELEASE IS BEING DELAYED**

Inmate Name:________________________________

Register Number:____________________________

Date:_______________________________________

Your previously scheduled [4046C CMPL Date] of

________________________ [has been delayed until ____________]

[is no longer applicable] for the following reason:

________ Additional time is needed to prepare an adequate release plan for the following reasons:

________________________________________________________

________________________________________________________

________ Other:

________________________________________________________

________________________________________________________

________________________________________
Staff Signature

________________________________________
Staff Title

________________________________________
Date

cc: Inmate Systems Manager